May it please the court, good morning. My name is Gene Lester. I represent the defendant, Mr. McManus. We are asking this court to adopt a case-by-case approach that requires the sentencing court to consider the evidence by preponderance of something more than mere use of a file-sharing program to go from a two-level enhancement to a five-level enhancement. We contend that the sentencing court must consider the actions of the defendants rather than the mere type of file-sharing program technology used. We are asking the court to require the sentencing court to look at both. Under your hypothesis, and I appreciate the clarity of that, thank you. Under your hypothesis, what would be required? Since you appear to be arguing that this invitation and acceptance feature of GigaTribe is not enough, what in your view would be sufficient to establish the expectation of receipt of a thing of value? Well, courts have shown us that already, Your Honor. To go from a two-level enhancement to a five-level enhancement, courts have found that a thing of value could be additional pornographic material. It could be faster download speeds. It could be the expectation of those things. And where courts have found not only a peer-to-peer or file-sharing program in use, but an additional factor that was reasonably expected by preponderance of the evidence, then that would be more to impose that five-level enhancement. And here, we considered the district court, the sentencing court, committed an error when it failed to consider or did not find facts that suggested that this defendant expected something of benefit for using this particular file-sharing program. And you concede, then, under Leighton, the appropriateness of the two-level enhancement? Absolutely, Your Honor. Leighton is our starting point here. There is no contention that this defendant should not correctly receive the two-level enhancement for use of this file-sharing program. How is it that we know that the district judge didn't really take a facts and circumstances approach right before she ruled, she asked the United States, you're inviting people in and you're sharing so that they will let you see their stuff. You show them your stuff. Is that the argument? And then she immediately after that adopted the pre-sentence report as written, including its findings of fact, and overruled Mr. McManus' objections. I mean, how do we know that she just simply did what she did because they used GigaTribe? I think that's what she did. I think that she said, essentially, the use of GigaTribe… Well, no, no, that's not the point I'm making. The point I'm making is that it seems to me she may have been looking at all the facts and circumstances and GigaTribe was just one of them. Well, Your Honor, I think that the evidence was limited here and that statement by the district judge was limited to expressing the features of GigaTribe. And those features of GigaTribe are simply, well, it's a file-sharing program and we can allow all sharing or we can allow some sharing and that's a feature of the program and therefore, since you share files, there's a distribution element here and therefore we apply the enhancement. Now, the distinction is that if you look at U.S. versus Leighton, which is you had a program there where there was a file-sharing program, the defendant created a shared folder and others could have downloaded images from that shared folder. That's the exact same facts here under GigaTribe. Now, what the government is saying is that GigaTribe has enhanced features. It has a more sophisticated sharing function. But the court did not look at this defendant and say, did this defendant use that program or take advantage of those features in a way that would imply there should be an additional enhancement, a five-level enhancement. You're reflecting on the government's argument. I'm examining what the district judge, in fact, did. I mean, that's really what we look at, isn't it? Not just what the government's arguing here, but the record itself as to what she did. Well, right. And, of course, what the government evidence is suggests what's in front of the district judge to consider. And here, I don't think there was – Well, Curiel was, in fact, downloaded by the agent, of course, as of the time of this record. We don't know whether anyone else was downloading, but he had a number of usernames and had created this file that was accessible. I mean, why shouldn't we – it's sentencing, rather than turn it into this kind of hyper-technical exercise, recognize that she's heard all of that and she knows the law. I mean, we presume that she does and that she made a facts and circumstances determination, and Giga Tribe is just one element of that facts and circumstances determination. Honestly, I cannot find in the record where there is any evidence to support a finding where this defendant had an expectation of receiving something greater in value for use of this program. But that's circumstantial. I mean, it was downloaded and he left it out there. I mean, that's a circumstantial leap that can be made, but it's not a big leap. I mean, under some circumstances she may have concluded otherwise, but it seems to me to be a factual determination. Well, there is a – sure, it's factual determination. If it was for the district judge on appeal, it would be clearly erroneous. But I think here there was – if you take the facts that are in evidence and you apply them to the law, I think there was an error. And, Your Honor, a judge in Oklahoma talked about the concern in this area about the widespread – and summed up, I think, the concern and the reason we're here to argue this rule is that she said as widespread as computer use is now, enhancing for the use of a computer is like penalizing speeding and adding an extra penalty for using a car. And I think that's the concern we have here is that if we just focus solely, as the government did, and I think the evidence in this case in the record suggests, on the use of technology and don't focus on the defendant's expectations or defendant's conduct in connection with that technology, we have a risk of capturing more and more defendants into enhancements that were not originally designed for them. Your argument is based on this record, everyone who used Gigatribe would have a five-level enhancement. That's my concern, and that's the argument here, Your Honor. But let me understand. The further argument is that the mere fact that you use a medium that would allow receipt is not evidence that you had an expectation to receive that. I follow that, but let me ask this question. What about the fact that your client's own defense was, I put this out here because I was trying to lure child pornographers to expose themselves, pardon the pun, in order to turn this over to the authorities? Isn't that an expectation? It doesn't have to be a purpose for it. The fact is you did have an expectation to receive. What about that fact in this case that came from your client's own mouth? Your Honor, I don't think that fact, first of all, that would, that certainly doesn't create any defense to the conduct. It's not a defense to the conduct, but the question is does it come back to bite you on the backside when we look at the enhancement as the evidence of expectation to receive something? Why is that not beyond just Gigatribe use but actually direct evidence of expectation? Well, if you take that to its extreme, then essentially that would be for a lawful purpose. And I think that the expectation of value ought to be for some punishable purpose. And I think there's a difference there. It may be just my understanding of technology, but what's the difference then between any file-to-file sharing mechanism? Doesn't everybody share data with the expectation of receiving data? Not necessarily. What I'm asking is with respect to the, it seemed to me that the district court statement you're inviting people in and you're sharing so that they'll let you see their stuff. Isn't that the purpose of any file-sharing program? Right, and I think that's why the latent enhancement, two-level enhancement is appropriate in this case. So what is different about Gigatribe and the word in the district court's assessment that is what this argument turns on is inviting? It's that invitation and acceptance feature of Gigatribe that one has to rely on. Let me tell a story to try to illustrate my point. My father-in-law for years has used a dumb phone to make phone calls, and I have used a smart phone, and that smart phone to make phone calls. And that smart phone includes features like email and Internet that I find invaluable. And so for Christmas we give my father-in-law a smart phone, and this summer we said, you know, Dad, how are you enjoying this smart phone? He says, I think it's great. I love it. He says it's really good to make phone calls. And I appreciate your story, but tell me, my question is, is there a difference, is there a functional difference between the sharing aspects of passive file-sharing and sharing under Gigatribe other than the invitational feature? I don't think the features of Gigatribe. It's really a yes or no question. Okay. I apologize for not understanding that. You know, I don't think the sharing features go to the five-level enhancement. I think it's the conduct of the defendant in combination with the technology that informs the court whether to go to the five-level enhancement. Now, that can't be true because if there were a feature that required payment in exchange of something of value to access the site, that would certainly qualify. Well, yes, it would circumstantially. But here what we're talking about is a file-sharing program. But all I'm doing is pointing out that your argument that there has to be activity on the part of the individual in connection with the technology that is being used, that can't be correct. Well, I think you're right, Judge Duncan, and my argument would be limited to this case. And you're right, and to apply that argument to all cases would be to overstate the argument here. There may be features of a file-sharing program that warrant the elevated enhancement. You're right, there could be, but not in this case. But these aren't because the mere invitational aspect of it does not speak to the extent to which something of value is expected. That's correct, Your Honor. Any more than any other file-sharing program. Correct. And to finish the story, you know, you ask your father-in-law, how do you like using the phone? And he says, well, I like it a lot. And I said, well, how do you like the email and the Internet? And he says, well, I don't use it. Here, Mr. McManus had a knowing use of this. I mean, he understood GigaDrive's file-sharing capability. I mean, that's in the joint appendix at 109 paragraph 8. So, I mean, he understood. I mean, he had some technical savvy in relation to this. There's no question that he had the ability. You had given the example of your father not understanding these other things, but that's not the case of Mr. McManus because he understood. I'm not contending that in my example or my story that he had the ability to use those features other than the fact that he chose not to. And that what we have is we have a continuum of conduct and behavior. We have users on one end, and the Congress has decided that we're going to punish and prohibit this type of child exploitation, and there's no argument here about that decision. So we have a continuum of people who we punish. We have users, we have distributors, and we have active predators who manufacture. And on that continuum, we have levels of sophistication and use of technology. And initially, where someone may have used by picking up a magazine today and manufactured using some sort of photography or technology, today what you have is you have users using technology to use. And so as technology becomes more and more widespread, the enhancements are catching more and more behaviors that weren't necessarily intended. Now, if the sentencing guidelines wanted to say apply a five-level enhancement for use of giga drive or live wire, it could. But it doesn't say that. That's not what the sentencing guidelines say. The sentencing guidelines say look at the behavior of the defendant, and if the defendant used the program, apply it under late and apply two levels. If they used the program in connection with an expectation of thing for value, then apply the five. And that's where I think the district court let us down, and I would argue that we need a clear rule from this court saying that, just like we had in the Tenth Circuit, saying that what we do is we look at this on a case-by-case basis. A case-by-case basis is hardly a clear rule. Well, I think if you look at the Tenth Circuit, I think the Tenth Circuit did a good job of describing the rule. I would urge the court to consider that as a starting point to fashion a rule. Here, the question to imply an enhancement is a fact to be resolved on a case-by-case basis by the court. Your Honor, as I see my time is up. You may finish responding to Judge Duncan. That's a response to her question. Yeah, and I think I'd refer the court to Geiner, U.S. v. Geiner, the Tenth Circuit case in the brief, as a district or a circuit that has announced a clear rule in this area. Thank you. Thank you, Mr. Lester. Mr. Ramaswamy. May it please the court, good morning. My name is Anand Ramaswamy. I represent the United States. The government's argument is that the evidence in this case supports the application by the district court of the five-point enhancement at issue. A part of that evidence was outlining the features and operation of the program GigaTribe, but it's a mischaracterization of our position to state that we are seeking a per se rule for the use of GigaTribe. Counsel cited the Geiner case in the Tenth Circuit, and they made that assumption about the Eighth Circuit, and the Eighth Circuit clarified in Stoltz that that was not their position. They, too, relied on a case-by-case basis. A per se rule based on any software program would have no future utility. Software programs are frequently updated. New release versions come out. Even in this matter, we're speaking about GigaTribe as it existed some 30 months ago. Well, let's start with Layton. What is the difference between the technology in Layton that supported the two-level enhancement and the technology of GigaTribe that you are arguing justifies the five-level enhancement? It is a matter of, say, broadcast sharing and targeted sharing. There is no interaction in the user in Layton. It is a setting which is selected as the program is installed. In this instance, as in the PSR and the testimony shows, sharing is only accomplished through this invitation and acceptance process. There is no keyword search and return of results. It is that interaction that makes this distinct from Layton. So the distinction between the technology in Layton and the technology here is that this is a targeted sharing with an invitation and acceptance feature. I'd say that was the key distinction, yes. And what about those features? What do those features tell us about the receipt or expectation of receipt of a thing of value? It tells you that the sharing is more exclusive, certainly. But what does it tell us about the expectation of receipt of a thing of value, which is what we have to find to justify the five levels? Your Honor, what is crucial here is context. In the context of GigaTribe, when sharing is only accomplished through invitation and acceptance, then that context is crucial. It is true, just as the online covert employee did, you could receive files. What does the context tell us about expectation of receipt of a thing of value? Well, if you remove the context, we have a defendant's distribution of child pornography and nothing more than distribution. You would view him as a pornography donor. It's only within the context of a file-sharing program that you see his sharing is an expectation of the receipt that the other person will share their files. Why is that? If I might use an analogy, for instance, say a waiter or waitress, there's no contract when you enter a restaurant and someone is your waiter or waitress that you leave a tip. It's customary as part of the service. The person is already paid and they're doing a service, but it's customary that they expect a tip and that you will leave a tip. Now, it's not required, and it may not happen in every instance. But it's only through this sharing, it's only through that exchange, in that instance that it relates to income, but in this instance it's only through the exchange that file-sharing networks operate. If everyone were, for instance, only downloading from others, there would be no ability to share and exchange files. As the Eighth Circuit said in Griffin, the context is these are file-sharing networks. They are made for the purpose of people sharing files. Aren't they all? Isn't that the purpose of a file-sharing program? It is, but it is as we had in our supplemental authority letter. GigaTribe is different. And I'm trying my best to understand the way in which it is different that contributes to our understanding of the requirements of the enhancements under the sentencing guidelines. There is no requirement that you distribute files in order to receive. Even as the online covert employee did, he received files from Defendant McManus without having shared them himself. The distribution itself, going to the case-by-case analysis. But distribution is not in dispute. Once you put it on, that's the distribution. The question is, was it a distribution for the expectation to receive something of value? That's not disputed. There are two things, and I think the Eighth Circuit in particular and the Eleventh Circuit as well look to direct and circumstantial evidence. That circumstantial evidence relates, again, to context. But you have, as Your Honors have stated previously, the Defendant's own admission of what he was doing. He was gathering things from other people, in his words, to use as evidence to incriminate. I think counsel made a good retort to that. I mean, here, if we accept that, then he's being a good citizen, and he's doing citizen police work. You can't have it both ways. You can't say I'm accepting it as truth and then not. The essence of it, that would be it's like a mom or a dad on the Internet trying to make sure their child is not involved. And you say, well, I only did that because by doing this, I went there to see whether or not my child's name was going to be on a chat list so I could make sure the juvenile authorities or we could do that. He got a hard press and said, no, no, you were on that pornography, if, in fact, that was the sole reason. So I thought counsel's response to my statement was pretty good in that. I would disagree with that response in this regard. There is no justification for possessing child pornography. It's not uncommon when someone has something this socially unacceptable and which bears no freakiness. That's certainly a given. And there's no doubt, and Mr. McManus concedes, that the two-level enhancement would be entirely appropriate. We're not arguing about culpability here. We're just talking about the appropriate number of levels of enhancement to the sentence. I would argue that counsel is viewing Layton as a ceiling, that Layton established that distribution. Really, Layton hits on a crucial point. It's access, enabling access. In that case, it was blanket access to anyone who cared to keyword search and find your files. Here, it is targeted access. And in the remaining circumstantial evidence in this regard, you have someone who possessed over 400 files, had four GigaTribe accounts. The other circuits look at user sophistication, and he's distributing files to the online covert employee's screen name, Boy Love for You, consistent with the content of his collection. All those things together supported the district court's decision to apply the five-level rather than two-level enhancement in this case. But you agree you can't apply it just because you find aggravating circumstance because everything you said there was like, this is why we really need to give this person some time because there are 400 aggravations. But that's not the elements for this enhancement to go to level five. It says expectation to receive. You could be prolific in all those things you did. Those things wouldn't make the enhancement increase appropriate. Well, expectation, like intent, is a mental state. And as with intent, it's seldom provable by direct evidence. But it is all the evidence in this case that when you can only receive files from someone else after that friending process and by invitation, someone has to go first. The online covert employee, we don't have the evidence of an exchange because by law he's prohibited from distributing child pornography. And that is the only person in this case which we have the evidence of, but he did, and I know it's undisputed, he did distribute. And to view that distribution out of context, I think unfairly, it's an unfair burden on the government. The context is crucial here. It is only within this closed peer-to-peer system. Unfair burden? My goodness, we're talking about criminal punishment and Congress allows it to be proven by preponderance of the evidence. It seems like you've got a big advantage there. It's sort of an anomaly until we start doing these things with sentencing. It always was beyond a reasonable doubt, but now acquitted conduct, unindicted conduct. My goodness, you've got all kinds of advantages. Well, I would point out in the record that all the advantages the government could have pursued, the government did not pursue, the government did not request, even in this matter, a guideline-range sentence. And even counsel for the defendant acknowledged that we did not press for every advantage in this case. Regardless, because of this content, there had to be some accountability. We would argue it is distinguishable from latent in that it is a target. A closed peer-to-peer system. A closed peer-to-peer system involves targeted sharing, which only works through the invitation and acceptance process. In that regard, it is distinguished from latent. I know other circuits have viewed even the open peer-to-peer as the five-point enhancement. That was never the issue in latent. In my experience, I've never seen, in an open peer-to-peer system, the five points either recommended or applied. So it's not as a concern by this court in Williams that the rule was going to swallow up the conduct. Not everyone who engages in trading of child pornography, even with a computer, uses a peer-to-peer program. Some use email. Not everyone who uses a peer-to-peer program uses a closed peer-to-peer program. And in this instance, even those using a closed peer-to-peer program, again, speaking of something as it operated two and a half years ago, there are other means beyond closed peer-to-peer programs for the distribution of child pornography through the Internet, the BitTorrent system, for instance. The district court heard the entirety of the evidence, and while her summation focused on the instance of being able to view the invitation and acceptance, we would contend it is founded on all the facts. Sharing in this regard is sort of like window shopping, but you need the key to get in the store, and that key is the password. So what you're basing your argument is that if I invite you to dinner, it's automatically that means I want you to invite me to dinner later? It's not automatic. That's what you're basically saying. No, I would not argue that it would be automatic. That's all you have is an invitation to look at what I have. You don't have any evidence of bartering back and forth. See, no matter what medium you use, you've got evidence of bartering that doesn't matter. Well, there's a point at which the comparisons to things such as bartering and exchange and swap, which come from contract law, no longer apply. In the file-sharing process, a person is allowing access. What they have, they're never truly dispossessed of. Right. What is traded is access. And it is true that it is not mandatory that that access be exchanged, but it is customary. And it is looking at the individual circumstances of this case. Did you put evidence into that in the record from an expert to say that? That it is customary? Yeah. You ask for judicial notice of that? In the record, it is. I mean, there are answers to these questions, I assume, because you're not answering them. Is that in the record, that you have evidence of that, what you just said? The agent testified as to the invitation and acceptance process and that it is not mandatory that passwords be exchanged. Right. It's customary that when you allow someone to see something, that you're going to require them or expect them to let you see something that they have. Is that in the record? I believe it is in Special Agent Lederhoff's testimony, Your Honor. I believe that in the description, and most of his testimony is in this description of Giga Tribe. In his description. But again, you're going to someone's individual mental state. Regardless, that's part of the context of the sharing. That's why someone, we would argue, why someone does distribute. But you must look at the individual facts. And here I think it's clear. Defendant McManus is trying to, in his words, gather evidence. Because if you use Giga Tribe and you allow someone who accepted your invitation to look at what you have, you would say that's per se a five-level. I would not say it's per se. What would prevent it from being per se five-level? Give me the limitation, the limiting aspect of your argument. Well, are you... Using Giga Tribe, they distribute because they put child pornography on. They invite a person to come on. That person comes on. Why wouldn't that be, every time, just those facts alone, per se, five-level enhancement? Well, in your Honor's example, if they did indeed allow access, the friending invitation, and distributed child pornography, I would not say it's per se, but I think it creates a rebuttable presumption. Why would it not be per se? What is the limiting aspect of it? Oh, you mean just the vagaries of whether or not the government wants to press it or not, or whether the court wants to do it? I'm talking about what is the limiting aspect of your argument. Why would it not be per se? Well, in other circuits... We're talking about our circuit right now. Let's talk about this court, trying to understand your argument, because these cases do have to have some meaning beyond just this case. If we accept, on this record, your argument, what would be the limiting aspect if you use GigaTribe and you invite people to look at what you have? I think that, on those facts alone, that the evidence would support a finding that there was the five-point distribution. As to a per se rule, I think the court would still need to hear evidence of other things, including user sophistication. Sophistication would come into being? Yes, Your Honor. You own GigaTribe, so now you have to be a sophisticated user? Well, sophistication, I think, is relative to the program. In this case... In Mr. McManus's case, the use of four different accounts and the knowledge of the means by which it operates. How long does it take to get an account for email? I mean, isn't that pretty quick? Well, it's... I mean, is that rocket science? No, Your Honor, no. I didn't think so. I guess if you're looking for the limits, it would be the examples of when you have the unsophisticated user. The evidence I've been talking about is things that support a sophisticated user, but say a... perhaps a shared computer and evidence of that individual's knowledge of the use of the account. Well, then that's the evidence. You add an element of whether or not, in fact, you distributed it. Okay, all right. I think we understand your argument, but your time is not out. If you'd like to argue more, you can. No, Your Honor, unless you have any other questions. Well, it just seems that your argument devolves to the more one imposes limits or exclusivity on a file-sharing network, the greater the expectation... a greater expectation of reciprocity is inherently increased. I would not disagree with that, because the only means of sharing is through that reciprocity. Yes, Your Honor. Thank you. Thank you. Mr. Ameswamy. Mr. Lester, you have a little time reserved. Just briefly, Your Honors, I think it's easier for me to think about these file-sharing programs in their sort of lawful use, which might be, for instance, music. And if you're going to share music files with other people, I could share with everyone. I could share with no one. And now what my understanding is what GigaTribe has done is added a feature that says, well, you can pick and choose who it is that you want to share with. So I contend that GigaTribe just is a technological advancement that allows people more freedom to pick and choose who they might share with rather than always on or always off. Now here we know that the sharing feature was on, because that's how the agent acquired the pornographic images from this defendant. And so in that way it's like a peer-to-peer sharing program. But the only technology that I think GigaTribe introduces is an advancement. And that's my concern in this case, is if we're just looking at the per se application of the technology and the sophistication of that technology and we continue to apply that down the curve of users. For instance, here, probably the lowest level type user here,  he doesn't ask, thankfully, anyone for sex. He doesn't specifically ask anyone for faster download speeds. He doesn't do any of these things. He just is a 20-year-old kid who says, hey, this is the technology that's available to me today to obtain music files, and oh, by the way, I can also obtain these things that are illegal, and uses it. And that's where I think we need to be careful, where the judges consider just not only the technology at use, specifically where the sentencing guidelines say, well, this technology may be available. It may allow people to do certain things. But the sentencing guidelines do not say apply the enhancement for that technology. The sentencing guidelines say apply it if that technology is used in combination with certain conduct. And that's our concern here, Your Honors. And so we would ask the court respectfully to announce a rule that requires there to be a finding by the court of a distribution in exchange for value and remand this case for re-sentencing so we can look at that question under the law. Mr. Lester, I note that you're a court opponent. I want to especially thank you for that service. On behalf of the court, we couldn't do our work without your fine services, and we appreciate that very much. Mr. Ramaswamy, also thank you for ably representing the United States. We'll come down and greet counsel and then proceed to our next case.
judges: Roger L. Gregory, Allyson K. Duncan, Samuel G. Wilson